Treadwell HAUGEN, Plaintiff and Appellant,

v.

AUTO–OWNERS INSURANCE COMPANY OF LANSING, MICHIGAN, Defendant and Respondent.

Civ. No. 8732.

Supreme Court of North Dakota.

Oct. 22, 1971.

Lanier, Knox & Olson, Fargo, for plaintiff and appellant.

Wattam, Vogel, Vogel & Peterson, Fargo, for defendant and respondent.

ERICKSTAD, Judge.

The plaintiff Treadwell Haugen appeals from the trial court's judgment of January 14, 1971, dismissing his complaint against Auto-Owners Insurance Company of Lansing, Michigan. He demands a trial de novo in this court.

In his complaint, Haugen asserts that Auto-Owners Insurance Company, whom we shall hereinafter refer to as the Company, is a liability insurance company incorporated under the laws of the State of Michigan; that he purchased, paid premiums for, and was at all times material to this action duly covered and protected by a policy of liability insurance with the Company; that on the 19th of November, 1969, he was served with a summons and complaint in an action brought by Walter Otterson, asking damages in the sum of $900 plus costs, alleging negligence on the part of Haugen in the installation of a furnace; that thereafter Haugen notified the Company of the suit and it refused to defend the same, necessitating that Haugen employ his own attorney and defend the suit; that Haugen through his own attorney has negotiated a settlement for the sum of $300, and that under the terms of the policy of insurance he cannot settle said lawsuit without jeopardizing his coverage under the policy; and that an actual controversy exists between Haugen and the Company. He prays that the court determine whether the Company is obligated to defend him and to extend coverage to him for the damages arising out of the matter set forth in the complaint.

The Company, by answer, asserts that coverage for products liability was excluded; and that causes of action arising out of completed installations were also excluded. It admits that an actual controversy exists between Haugen and itself and asks that its obligations under the insurance policy be determined.

The pertinent stipulated facts are that between September 11, 1968, and September 11, 1969, certain of Haugen's business operations were insured under a policy of insurance issued by the Company; that in the fall of 1967, Otterson bought an oil-burning furnace from Haugen and hired him to install the furnace together with the necessary fuel tank and connecting pipes in the basement of the Otterson home; that thereafter Haugen did plan and make the installation of the furnace, fuel tank, and connecting pipes in the Otterson home, completing the installation by the end of 1967; that on April 8, 1969, while the fuel tank in the Otterson home was being loaded with fuel oil, the piping installed by Haugen separated at one of the joints and the fuel oil ran into the basement of the Otterson home; that Otterson subsequently brought a lawsuit against Haugen alleging that the furnace and the equipment had been improperly and defectively installed in that Haugen had used plastic piping and had failed to properly seal the pipe connections; that the Company did not assume the defense of this suit against Haugen, on the ground that the loss involved was not covered by the insuring agreements of the policy issued to Haugen; that thereafter Haugen through his attorney negotiated a settlement of the lawsuit against him for the sum of $300; and that the only issue of fact and law to be decided in the declaratory judgment action is whether the policy issued by the Company to Haugen covers Otterson's claim.

That part of the insurance policy entitled "DECLARATIONS" includes a "DESCRIPTION OF HAZARDS" which contains five categories described as follows: "1. Premises—Operations 2. Elevators 3. Products—Completed Operations 4. Contractual—Contracts as defined in the policy, other contracts not covered unless described herein 5. Protective".

The trial court found from that part of the policy which contains the breakdown of the premiums for the various coverages that no premium was paid for category 3 coverage.

That part of the policy which lists the premium rates under the column "DE-

SCRIPTION OF HAZARDS" contains the following reference: "3—PRODUCT LIABILITY EXCLUDED".

The trial court concluded that by a specific endorsement attached to the policy, "PRODUCTS AND COMPLETED OPERATIONS HAZARDS" were specifically excluded.

The endorsement reads:

## "PRODUCTS AND COMPLETED OPERATIONS HAZARDS EXCLUSION ENDORSEMENT

"It is agreed that the policy does not apply to the Products Hazard or Completed Operations Hazard as defined therein."

The "PRODUCTS HAZARD" is defined in the policy under Section III "R", as follows:

"[S]hall mean goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such bodily injury or property damage occurs away from premises owned, rented or controlled by the named insured provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold."

The "COMPLETED OPERATIONS HAZARD" is defined in the policy under Section III "S", as follows:

"[S]hall mean operations including reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property

damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

\* \* \* \* \* \*

After discussing alleged ambiguities in the policy, the court found that the terms of the policy were not ambiguous and accordingly dismissed Haugen's complaint with prejudice.

In this appeal, Haugen contends that the trial court erred in finding that the Company's liability for coverage on the loss in question was plainly and unambiguously excluded.

He asserts that the policy contains the following ambiguities:

"AMBIGUITY ONE. Under Description of Hazards Subdivision 3, 'Products —Completed Operations', as shown in the policy declaration and on the additional schedule, only product liability is excluded and no specific exclusion of completed operations has been inserted by the defendant insurer. We submit that, if the defendant had intended to exclude completed operations under this declaration, it was incumbent upon the insurer to do so. The apparent meaning of this provision must be that completed operations are not excluded. Whatever the meaning or intent of the draftsman, the ambiguity must be resolved against the insurer.

"AMBIGUITY TWO. The Explosion and Collapse Hazards Exclusion Endorsement is written to explicitly provide that that exclusion does not apply to completed or abandoned operations within the meaning of the completed operations

hazard. Consequently, the insured could expect coverage for explosion or collapse liability even though his work be completed, and such would be a reasonable construction if it were not for the terms of the Completed Operation Hazards Exclusion Endorsement. But, is there coverage? The ambiguity is crystal clear, one exclusion excludes specific coverage in another. Again, the ambiguity must be resolved against the insurer.

"AMBIGUITY THREE. The Subsurface Damage Exclusion Endorsement is written to explicitly provide that that exclusion does not apply to completed or abandoned operations within the meaning of the completed operations hazard. We have precisely the same question here as in ambiguity two, one exclusion excluding another.

"AMBIGUITY FOUR. Under exclusion (f) of the Insuring Agreements, failure of the insured's completed work to perform is excluded, however the exclusion specifically provides that it does not apply to damage resulting from the active malfunctioning of such completed work. Thus, exclusion (f) and the Completed Operations Hazard Exclusion Endorsement are inconsistent and ambiguous. Again, one exclusion excluding another. Again, the ambiguity must be resolved against the insurer."

■ An ambiguity, if any exists, in an insurance policy must be construed in favor of the insured. Section 9–07–19, N.D. C.C. Prince v. Universal Underwriters Insurance Co., 143 N.W.2d 708, 713 (N.D. 1966); Conlin v. Dakota Fire Insurance Company, 126 N.W.2d 421, 425 (N.D. 1964); Adams v. Bartel, 129 N.W.2d 755, 758 (N.D.1964).

The basic question herein then is whether there exists any ambiguity in the policy respecting coverage for "COMPLETED OPERATIONS".

■ We are of the opinion that any ambiguity that may have resulted from the Company's failure to include with the "PRODUCTS LIABILITY" exclusion under "DESCRIPTION OF HAZARDS" any reference to a "COMPLETED OPERATIONS" exclusion was cleared up by the "PRODUCTS AND COMPLETED OPERATIONS HAZARDS EXCLUSION ENDORSEMENT", which specifically states that it is agreed that the policy does not apply to the "PRODUCTS HAZARD OR COMPLETED OPERATIONS HAZARD as defined therein."

■ Inasmuch as the "COMPLETED OPERATIONS HAZARD" is defined in Section III "S" as relating only to bodily injury or property damage which occurs after operations have been completed or abandoned, and as the separate endorsement states that the policy does not apply to a "COMPLETED OPERATIONS HAZARD", there is no coverage in the instant case, the installation of the furnace having been completed months prior to the occurrence of the facts which give rise to the complaint herein.

In support of his position, Mr. Haugen has referred us to Cohen Jacoby v. United States Fidelity & Guaranty Company, 27 Misc.2d 396, 199 N.Y.S.2d 537 (1960), which, incidentally, is a trial court opinion in the Supreme Court of Westchester County, New York. That case may be distinguished on its facts alone, inasmuch as there was a question in that case as to whether the insured had actually completed or abandoned the work at the time of the accident. There is no such question in the instant case.

Mr. Haugen has cited, among other decisions, Peerless Insurance Company v. Clough, 105 N.H. 76, 193 A.2d 444 (1963), a three-to-two decision of the Supreme Court of New Hampshire. In that case, the insured was a building contractor who had built two cottages on a cost-plus basis for different owners. As a result of fires which occurred in both of the cottages, he was sued for defective construction of the fireplaces in the cottages. In each in-

stance, the fires occurred after the cottages were completed.

 The majority of the court in *Peerless*, adopting the rule that an insurance policy is held to mean what a reasonable person in the position of the insured would think it meant, citing Hoyt v. American Eagle Fire Insurance Company, 92 N.H. 242, 243, 29 A.2d 121, 148 A.L.R. 484 (1942), held that the contractor would not naturally think that his coverage was restricted or affected in any manner by anything contained in a definition boldly headed "Products—Completed Operations", a subject which the majority thought did not concern him.

Speaking for the majority, Justice Blandin said:

"While the authorities are conflicting, other courts faced with situations comparable to that which confronts us here have concluded that the 'Products—Completed Operations' exclusion does not apply in the case of an insured contractor. Nielson v. Travelers Indemnity Co., 174 F.Supp. 648 (N.D.Iowa 1959); affirmed in Travelers Indemnity Co. v. Nielson, 277 F.2d 455 (8th Cir., 1960); McNally v. American States Insurance Co., 308 F.2d 438 (6th Cir., 1962); Hoffman & Klemperer Co. v. Ocean Accident & Guar. Corp., 292 F.2d 324 (7th Cir., 1961); Kendrick v. Mason, 234 La. 271, 99 So.2d 108." Peerless Insurance Company v. Clough, 105 N.H. 76, 193 A.2d 444, 449 (1963).

The dissent in *Peerless* is interesting and equally pertinent. A part of it follows:

"I agree with the majority opinion that in construing this insurance policy this court should consider it as a whole in the light of all the circumstances and interpret it as a reasonable person in the position of the insured should understand it. Lalos v. Tickler, 103 N.H. 292, 295, 170 A.2d 843."

\* \* \* \* \* \*

"It must be admitted that this policy could have been couched in different language and framed in a manner which might have expressed more clearly its agreements, conditions and exclusions. However this deficiency is not to be turned into a license to ignore the language of the contract as written and to discount the meaning which a reading of the whole policy reveals. Smedley Co. v. Employers Mut. Liability Ins. Co. of Wis., 143 Conn. 510, 123 A.2d 755.

"The policy found applicable by the majority opinion was a manufacturer's and contractors' schedule general liability policy issued by the Company to Clough for the period from May 10, 1958 to May 10, 1959. Although it could have been written to cover four divisions of hazards, by its terms 'the insurance afforded is only with respect to such \* \* coverages and divisions as are indicated by specific premium \* \* \* charges.' The declaration attached to it showed that Clough paid premiums for coverage against the hazards under division 1 only.

"By its terms this policy insured Clough against liability for bodily injury and for property damage caused by accident and arising out of the ownership, maintenance or use of the premises and all operations. It specifically provided however that this policy does not apply under division 1 (purchased by Clough) to the Products—Completed Operations Hazard which would be covered under division 4 (not purchased by Clough). Among the hazards thus excluded is 'operations, if the accident occurs after such operations have been completed or abandoned.' (Division 4 Products—Completed Operations (2)).

"It seems that a more than casual reading of this policy by an ordinarily intelligent insured would give him to understand that there was a difference between operations and completed operations and that the coverage which he purchased covered accidents occurring

while all his operations were being performed but excluded liability for accidents which took place as a result of a completed operation. Employers Insurance Company of Alabama v. Rives, 38 Ala.App. 411, 87 So.2d 646; Clauss v. American Automobile and Insurance Company, 175 F.Supp. 641, 644 (E.D. Penn.1959); Zingale v. American Surety Company, 105 Ohio App. 16, 146 N.E.2d 317 (1957); Butler v. United States Fidelity & Guaranty Co., 197 Tenn. 614, 277 S.W.2d 348 (1955); Baker v. Maryland Casualty Co., 73 R.I. 411, 56 A.2d 920. * * *" Peerless Insurance Company v. Clough, *supra*, 193 A.2d 444, 449, 450.

As was true in *Peerless*, as pointed out by the dissent therein, the insured in the instant case did not pay any premium for coverage under category 3, "PRODUCTS —COMPLETED OPERATIONS".

The introductory part of the policy in the instant case reads:

" * * * the Company, in consideration of the payment of the premium and of the statements in the Declarations made a part hereof and subject to all the terms of this policy, agrees with the insured named in the Declarations with respect to any one or more of the coverages for which a premium is charged:"

One is alerted from that introductory phrase of the policy that one has coverage only for that which he pays a premium for.

The rule that insurance policies are to be interpreted as a whole so as to give effect to all of the provisions of the policy if reasonably practicable, adhered to apparently by both the majority and minority in *Peerless*, is also the rule in this State by statute.

"9–07–06. Contract interpreted as a whole.—The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C.

Our court in Miller v. State Automobile Insurance Association, 74 N.D. 306, 21 N.W.2d 621, 623 (1946), Syllabus ¶ 5, has held that when there is conflict between the provisions of an insurance policy form proper and the endorsement attached thereto, the provisions of the latter prevail.

In light, then, of what we have said herein, while at the same time recognizing that there is room for action on the part of the Legislature and on the part of the insurance commissioner to require that insurance companies make their policies and especially the exclusions more clear, we affirm the judgment of the trial court.

STRUTZ, C. J., and PAULSON, KNUDSON and TEIGEN, JJ., concur.