AID INSURANCE SERVICES, INC.,
Plaintiff and Appellant,

v.

Mel GEIGER, d/b/a Mel's Concrete Construction, Defendant and Appellee.

Civ. No. 9754.

Supreme Court of North Dakota.

June 26, 1980.

Anderson, Tossett & Dobrovolny, Minot, for plaintiff and appellant; argued by A. R. Tossett, Minot.

Kenner, Halvorson & Sturdevant, Minot, for defendant and appellee; argued by Harris P. Kenner, Minot.

ERICKSTAD, Chief Justice.

This is an appeal from a summary judgment granted by the Ward County District Court, Northwest Judicial District, in favor of the defendant. We affirm.

This case arose out of a declaratory judgment action instituted by the plaintiff, Aid Insurance Services, Inc. (Aid Insurance), against the defendant, Mel Geiger (Geiger), doing business as Mel's Concrete Construction in Minot, North Dakota. The purpose of the action was to determine whether or not a comprehensive general liability insurance policy issued by Aid Insurance to Geiger afforded coverage for a property damage award obtained against Geiger in a prior lawsuit.

The facts are not in dispute. The record reveals that on January 30, 1978, Cloverdale Foods Company of Mandan, North Dakota, and Northstar Steel, Inc. of Minot entered into a contract for the construction of a large warehouse on Cloverdale's land, commonly referred to as the "Cloverdale Project". Northstar Steel subcontracted all concrete work on the project to Geiger, which included driveways, footings, walls, flooring, and foundations. Suffice it to say that a contract dispute arose over construction delays, faulty workmanship, and alleged defects in the building, and Cloverdale commenced a lawsuit against Northstar Steel and Geiger by the filing and service of a summons and complaint on March 30, 1979. Judgment was entered against the named defendants on October 18, 1979, in the amount of $143,019.96. By way of indemnity on its cross-claim, Northstar Steel obtained judgment against Geiger in the amount of $32,560.70 plus costs and disbursements in the amount of $1,350.95.

The trial court in the underlying breach of contract action found in its memorandum opinion that:

"It is undisputed that Mel's did not pour and form the interior footings as required by Exhibit 2. For this lack of workmanship and neglect in deviating from the plans, he is liable to plaintiff [Cloverdale Foods Company] for the sum paid to Lunn's Construction to replace the footings. . . . He is thus liable for $9,379.18.

\* \* \* \* \* \*

"Evidence also establishes that the cushion sand under the warehouse floor was not properly compacted by Mel's giving rise to the problems previously mentioned: namely, joint movement. Mel's is thus liable for the cost of solidification in the amount of $23,181.52."

In connection with his concrete construction business, Geiger had procured a comprehensive general liability insurance policy from Aid Insurance which he sought to recover under. It is undisputed that the policy was in full force and effect throughout the duration of the "Cloverdale Project" and the ensuing litigation.

The insuring clause of the comprehensive general liability policy provides:

"1. COVERAGE A—BODILY INJURY LIABILITY
COVERAGE B—PROPERTY DAMAGE LIABILITY

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

"*Exclusions*

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but *this exclusion*

*does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner* ; [Emphasis added.]

\*     \*     \*     \*     \*     \*

(*o*) *to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith* ; [Emphasis added.]

The policy defines "property damage" as: "(1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;"

After considering the pleadings and relevant case law, the district court determined in its memorandum opinion of December 10, 1979, that exclusions "(a) and (o) read together, are subject to more than one reasonable interpretation, one of which would allow for coverage as to Defendant's [Geiger's] claim." The district court determined that Aid Insurance was obligated under the insurance contract to pay the judgment of $33,911.65 plus interest at the legal rate, from October 3, 1979, in the amount of $401.29. The total judgment award thereby amounted to $34,312.94.

Summary judgment was entered on December 14, 1979. Aid Insurance has appealed to this court from that judgment.

▮▮▮ The purpose of summary judgment is to allow for the prompt disposition of a case on the merits, without a trial, when there is no dispute as to the salient facts or when only a question of law is involved. Rule 56, N.D.R.Civ.P.; *Pioneer State Bank v. Johnsrud,* 284 N.W.2d 292 (N.D.1979). An insurance policy is a contract and the construction of a written contract to determine its legal effect is a ques-

tion of law for the court to resolve. *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894 (N.D.1978). Therefore, summary judgment was the proper method of disposition in the instant case. *See Balsam v. Buehner,* 278 N.W.2d 425 (N.D.1979). This court will independently examine and construe the pertinent provisions contained within the insurance policy issued by Aid Insurance to Geiger to determine whether or not the district court's construction of the relevant exclusionary provisions was in error.

As previously indicated, the basic comprehensive general liability policy at issue contains the following exclusion under Coverage B, Property Damage Liability, in subparagraph (*o*):

"This insurance does not apply:

(*o*) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

Geiger has conceded, for the sake of argument, that this provision, standing alone, would exclude coverage for the liability asserted by Northstar Steel against Geiger as a result of faulty workmanship performed on the Cloverdale Project. However, also as previously indicated, the insurance policy contains an exclusion in subparagraph (a) which Geiger contends provides coverage and which reads:

"This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;"

Aid Insurance contends that the comprehensive general liability insurance policy issued to Geiger does not provide coverage for the loss sustained, and further argues that exclusion (a) neither extends nor grants coverage under the circumstances.

Instead, Aid Insurance's position is that the exception to exclusion (a) merely removes breach of implied warranty of fitness and quality or workmanship from the specific exclusion relating to contract liability, and the exception remains subject to and limited by all other related exclusions contained in the policy. We disagree.

This court has had occasion to examine and construe the effect of exclusion (a) in the case of *Applegren v. Milbank Mut. Ins. Co.*, 268 N.W.2d 114 (N.D.1978) wherein we said:

> "In examining and construing the policy, we find that paragraph (a) [the language of which is identical to exclusion (a) in the instant case] contains an exclusion to an exclusion, or, to state it another way, an exception to an exception. The controlling language is: 'but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.' This clearly means that the policy covered and applied to the insured's warranties that the work would be performed in a workmanlike manner. We can reach no other conclusion." *Id.* at 118.

We adopt the same reasoning and conclusion with respect to the pertinent exclusionary clause in the insurance policy issued to Geiger.

What Aid Insurance gives to Geiger in the form of coverage pursuant to the exception to exclusion (a), it purports to take away through the provisions of exclusion (*o*), the "business risk" exclusion. The two exclusionary clauses are irreconcilable and patently ambiguous. "An ambiguity exists when good arguments can be made for either of several contrary positions as to the meaning of a term, . . ." *Kruger v. Soreide*, 246 N.W.2d 764, 768 (N.D.1976). We believe that exclusion (a) is in conflict with exclusion (*o*) and therefore an ambiguity exists.

We recognize that when the language of an insurance policy is clear and explicit, the language should not be strained in order to impose liability on the insurer. *Stetson v. Blue Cross of North Dakota*, 261 N.W.2d at 897; *Tennefos v. Guarantee Mutual Life Company*, 136 N.W.2d 155 (N.D.1965). However, it is well-established in North Dakota that, because an insurance policy is a contract of adhesion, any ambiguity or reasonable doubt as to the meaning of the policy is to be strictly construed against the insurer and in favor of the insured. If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted. *Kasper v. Provident Life Ins. Co.*, 285 N.W.2d 548 (N.D.1979); *Henson v. State Farm Fire & Cas. Co.*, 252 N.W.2d 200 (N.D. 1977); *Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663 (N.D.1977); *Hughes v. State Farm Mut. Auto Ins. Co.*, 236 N.W.2d 870 (N.D.1976); *Nodak Mutual Insurance Company v. Loeffler*, 225 N.W.2d 290 (N.D. 1974); *Haugen v. Auto-Owners Insurance Co. of Lansing*, 191 N.W.2d 274 (N.D.1971). Section 9–07–19, N.D.C.C., provides in part:

> "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, . . ."

We conclude that uncertainty does exist in the present case and the language of exclusion (a) is susceptible to a construction which will impose liability on the insurer, Aid Insurance, and afford coverage to the insured, Geiger. The coexistence of exclusionary provisions (a) and (*o*) creates, at the very least, an ambiguity which must be resolved in favor of the insured so as to provide coverage. Insurance contracts are unipartite in character. They are drafted by company experts learned in the law of insurance. Insurance policies should be written so that an ordinary layperson, un-

trained in the field of insurance, can clearly understand them and know whether or not coverage is afforded. If they are not so written, the insurance company must assume the consequences of the ambiguity and resulting confusion.

We say this fully cognizant of the conflicting decisions of the various jurisdictions which have construed identical or comparable provisions.[1]

For the reasons stated herein, we affirm the judgment of the district court in this case.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

1.  An exclusion "o" type of provision in a comprehensive general liability policy was construed to bar coverage for a claim based upon faulty workmanship, notwithstanding an exclusion "a" type of provision in *Vernon Williams & Son v. Continental Ins. Co.*, 591 S.W.2d 760 (Tenn.1979); *U. S. Fire Ins. Co. v. Colver*, 600 P.2d 1 (Alaska 1979); *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979); *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978); *Haugan v. Home Indemnity Company*, 86 S.D. 406, 197 N.W.2d 18 (S.D.1972). *But see Indiana Ins. Co. v. De-Zutti*, 396 N.E.2d 699 (Ind.App.1979); *Custom Roofing Co. v. Transamerica Ins. Co.*, 120 Ariz. 196, 584 P.2d 1187 (Ct.App.1978); *Commercial Union Assur. Companies v. Gollan*, 118 N.H. 744, 394 A.2d 839 (1978); *Federal Insurance Company v. P. A. T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976); *Fontainebleau Hotel Corp. v. United Filigree Corp.*, 298 So.2d 455 (Fla.App.1974), *cert. denied* 303 So.2d 334 (Fla. 1974), wherein the courts held that exclusion (a) was repugnant to other exclusionary provisions and therefore an ambiguity existed which warranted the extension of coverage to breach of contract damages for the performance of work in a negligent or unworkmanlike manner.