**BALDT INCORPORATED**

v.

**AMERICAN UNIVERSAL INSURANCE COMPANY.**

Civ. A. No. 84–3577.

United States District Court,
E.D. Pennsylvania.

Jan. 2, 1985.

---

Kell M. Damsgaard, Philadelphia, Pa., for plaintiff.

Peter A. Dunn, Media, Pa., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Plaintiff Baldt, Incorporated manufactured and sold anchor chains to the Diamond M. Company for Diamond M's two offshore oil rigs. When Diamond M complained that the anchor chains broke apart during use, Baldt sued in Delaware state court for a declaratory judgment and Diamond M filed a counterclaim. The counterclaim complained of four instances when the anchor chains separated because of improper welding. It also complained of the risk of future separations of the anchor chains, and possible injury to life or property. Baldt had a comprehensive General Liability Insurance Policy with the defendant, the American Universal Insurance Company. After American took the position that it was not required under the policy to defend the counterclaim or to indemnify Baldt for the subsequent settlement with Diamond M, Baldt sued the defendant for its failure to defend and indemnify. The parties have filed and argued cross-motions for summary judgment on the duty to defend issue. Both sides agree that there is no genuine issue of material fact and that this issue should be decided on the existing record.

■ I find that under this insurance policy American Universal Insurance Company had the obligation to defend Baldt against counterclaims asserted by Diamond M in the lawsuit in Delaware state court.

The insurance policy stated:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage.

The policy defines an "occurrence" as "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The counterclaim by Diamond M against Baldt, Inc. describes four separations of the anchor chains manufactured by Baldt. Three separations occurred while the chains were being "storm tensioned." The other separation occurred while a chain was being "hauled" in preparation for a move of Diamond M's oil-drilling rigs. Diamond M asserted that the separations were caused by improperly welded chain links

and that, as a result of the defect, the company was forced to purchase replacement anchor chains. The counterclaim alleged that the exchange of anchor chains on the rig Eagle "took approximately five days and cost Diamond M approximately $369,914.80 in lost revenue and additional expenses." The counterclaim also stated that a similar exchange would have to take place on the rig Hunter. Diamond M's counterclaim contained counts for violation of the Texas Deceptive Trade Practices Act, breach of contract, breach of express warranty and breach of implied warranty.

■ When the allegations in a counterclaim state a claim which may potentially fall within the policy's coverage, the insurer must defend. *Charter Oak Fire Insurance Company v. Sumitomo Marine and Fire Insurance Co., Ltd.*, 750 F.2d 267 (3d Cir.1984); *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959). If American must defend *any* of Diamond M's claims, it must defend all of them. *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Company*, 467 F.Supp. 17 (E.D.Pa.1979).

Diamond M's counterclaim does allege an accident resulting in property damage and therefore satisfies the requirement of an "occurrence." The policy defines "property damage" to include "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." The counterclaim asserts that Diamond M lost revenues from the operation of its rigs while anchor chains were exchanged.

The question is not whether Diamond M's claims were based on a breach of contract theory or a negligence theory, but whether the claims alleged an "occurrence." *Barber v. Harleysville Mutual Insurance Company*, 304 Pa.Super. 355, 450 A.2d 718 (1982). Although the policy excludes liability assumed by the insured under any contract or agreement except as "incidental contract," incidental contracts include "any contract or agreement relat-ing to the conduct of the named insurer's business."

■ The defendant also argues that it had no duty to defend because of two exclusions in the policy. Exclusion M(2) states that the policy does not apply

> to loss of use of tangible property which has not been physically injured or destroyed resulting from ... (2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured....

The exclusion, however, also contains the caveat that it does not apply to loss of use

> of other tangible property relating from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured.

■ The counterclaim alleges loss of use of the rigs as a result of what can fairly be inferred was alleged to be a sudden and accidental injury to Baldt's anchor chains after they had been put to use by Diamond M. On May 1, 1983 and June 3, 1983, the chains separated while they were being storm tensioned following the oil rig's move to a new location. The chains broke on March 31, 1983 after they had been storm tensioned and on March 29, 1983 while being hauled in preparation for a move of the oil rig. Exclusion M(2), therefore, does not apply. American Universal contends that the damage to the anchor chains did not result from a sudden and accidental injury. The contentions of the counterclaim, however, satisfy the requirement that they allege an injury which *may be* within the policy. As Justice McBride said in *Cadwallader*, the insurance company must defend if the claim might or might not fall within the policy's coverage. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. at 589–590, 152 A.2d at 488.

The defendant also contends that Exclusion N vitiates its duty to defend. That exclusion states that the policy shall not apply

> to property damage to the named insured's products arising out of such products or any part of such products.

This exclusion also fails to excuse American Universal's refusal to defend. Diamond M's claims included damage to its property interests, not just to the insured's products. Property damage includes loss of use. One of Diamond M's claims is for loss of use of the oil rig. *See Pittsburgh Bridge and Iron Works v. Liberty Mutual Insurance Co.*, 444 F.2d 1286, 1288 (3d Cir.1971).

For the above reasons, I grant partial summary judgment for the plaintiff on the duty to defend issue. The duty to defend, however, is broader than the duty to indemnify, *Centennial Insurance Co. v. Applied Health Care Systems, Inc.*, 710 F.2d 1288, 1291 (7th Cir.1983), and I express no opinion as to that aspect of this case.