William J. SCHMITT, Plaintiff and
Appellant,

v.

The PARAMOUNT FIRE INSURANCE
COMPANY, a foreign corporation,
Defendant and Respondent.

William J. SCHMITT, Plaintiff and
Appellant,

v.

INDUSTRIAL INSURANCE COMPANY, a
foreign corporation, Defendant
and Respondent.

Nos. 7721, 7722.

Supreme Court of North Dakota.

Sept. 29, 1958.

Mackenzie & Jungroth, Jamestown, for appellant.

Hjellum, Weiss, Nerison & Ottmar, Jamestown, for respondent.

BURKE, Judge.

In these cases plaintiff sued to recover for damage to real and personal property. In his complaints he alleged that the loss sustained was one for which the defandants had agreed to pay indemnity under the provisions of the respective insurance contracts they had issued to him. The two cases were consolidated for trial and as a result of the trial the jury returned verdicts in favor of the plaintiff in each case. Judgments were entered in accordance with the verdicts. The defendant thereafter moved for judgment notwithstanding the verdict in each case. These motions were granted and new judgments in favor of each of the defendants for the dismissal of the actions were entered. These appeals are from the orders granting judgment notwithstanding the verdict and from the judgments entered pursuant to such orders. The only question in these cases is whether plaintiff's loss was within the coverage of the respective policies.

Plaintiff's home in Jamestown is heated by steam heat furnished by a public utility. The steam is supplied by a main which enters plaintiff's house through the north basement wall. The main is 2½ inches in diameter and it is insulated by what is described as a wood log. The wood log consists of two layers of wooden strips one inch thick and two inches wide which are bound together around the pipe. Each layer is impregnated with creosote for water-proofing and preservation. This wood log insulation extends into plaintiff's house a distance of about five inches from the inside of the basement wall.

During the night of June 7, 1956, there was a very heavy rainfall in Jamestown. The local Weather Bureau reported the amount as 4.90 inches. The rain water either by seepage or by flowing through cracks in the ground penetrated to the level of the steam main, where it entered within the insulating wood log through a break in its outer surface. The temperature of the steam in the main was normally from 230° to 250° and as the water flowed between the wood log and the steam pipe, it was converted into steam. Pressure was created and steam and water escaped into plaintiff's basement from between the pipe and the insulation at the point where the wood log terminated within plaintiff's basement.

Plaintiff's policy with the Paramount Fire Insurance Company insured against: "Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating, or air conditioning system or domestic appliance * * *."

His policy with the Industrial Insurance Company provided:

" * * * coverage is hereby extended to include direct loss to the described property by Water Damage From Plumbing and Heating Systems, * * *"

It also provided:

"Loss by water damage shall mean only physical injury to or destruction of the described property resulting from accidental discharge, leakage or overflow of water or steam from within a plumbing system, plumbing tank or stand pipe, heating system or domestic appliance * * *."

In so far as the loss in question is concerned there is no substantial difference in the stated coverage of the two policies and

the question of whether the loss in these cases is within that coverage depends on whether the accidental discharge of steam and water into plaintiff's house from between the main steam pipe and the insulating log which covered it, was a discharge from within a heating system. If it was, there is coverage. If it was not, there is none.

 An insurance contract, like any other contract, is to be construed according to the sense or meaning of the words that are used in the contract. 44 C.J.S. Insurance § 294, p. 1155. While the language of the contract should not be strained in order to impose liability upon the insurer, nevertheless, where it is reasonable to do so, the contract should be construed liberally to accomplish the purpose of the contract; that is, to provide indemnity. 44 C.J.S. Insurance § 297, p. 1165. Thus if the language used, reasonably raises a doubt as to its meaning, that doubt will be resolved against the insurer who wrote the contract. Conklin v. North American Life and Casualty Company, N.D., 88 N.W.2d 825. If the language of the policy is ambiguous and will reasonably support an interpretation which will impose liability as well as one which will not, the former interpretation will be adopted. Persellin v. State Auto Ins. Ass'n, 75 N.D. 716, 32 N.W.2d 644; Beauchamp v. Retail Merchants Ass'n, 38 N.D. 483, 165 N.W. 545.

In the instant case, rain water seeped through the insulation around a steam pipe which had no purpose other than to furnish steam for heating plaintiff's house. As the water flowed between the pipe and the insulation, the heat from the pipe converted the water into steam. Pressure developed and the steam escaped from between the insulation and the pipe at the point where the outside insulation ended in plaintiff's basement. It is contended by the defendant that the insulation around the pipe is not a part of the heating system and one of the witnesses testified that the insulation was not absolutely necessary. It is clear from the evidence, however, that every such installation has insulation and that insulation is absolutely necessary to the economical operation of such a system. The reasonable view therefore is that the wood log insulation is a part of the heating system and we so hold. The steam which did the damage to plaintiff's home and furnishings was formed between, and escaped from between, inner and outer parts of the heating system. It is certainly no straining of language to say that that which comes from between inner and outer parts of a system comes from within the system. This is a reasonable construction and following the rules of interpretation, stated above, we adopt it.

It follows that the judgments notwithstanding the verdicts must be set aside. The cases are therefore remanded to the district court with directions to reinstate the judgments entered pursuant to the jury's verdicts.

GRIMSON, C. J., and MORRIS, SATHRE and JOHNSON, JJ., concur.