Donald C. HENSON and Dana Henson, Plaintiffs-Appellants,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee.

Civ. No. 9291.

Supreme Court of North Dakota.

March 31, 1977.

Pringle & Herigstad, Minot, for plaintiffs and appellants; argued by Herbert L. Meschke, Minot.

Anderson, Tossett & Berning, Minot, for defendant and appellee; argued by D. A. Anderson, Minot.

PAULSON, Judge.

This is an appeal from the judgment of the district court of Ward County dated September 13, 1976.

We are asked whether the personal property insurance policy No. 34–049507 issued by the defendant [hereinafter State Farm] to the plaintiffs [hereinafter the Hensons] restricts coverage to a maximum of $1,000.00 on personal property that has been moved from the premises specified in the policy declaration to new premises established by the policyholders as their place of residence.

The Hensons, while living in a rented home near Deering, North Dakota, insured their household furnishings and personal belongings with a "Homeowners Policy" issued by State Farm on April 16, 1973. The policy covered "Unscheduled Personal Property" in the amount of $8,000.00, and "Additional Living Expenses" in the amount of $1,600.00. The policy also provided "Inflation Coverage" to automatically increase coverage at the same rate as the increase shown in the Consumer Price Index published by the United States Department of Labor. The policy's declarations described the Hensons' dwelling house as being of brick-veneer construction and set forth the legal description of the land on which the Hensons' rented home was situated.

The annual premium for the policy was $42.00. On or about March 20, 1974, the Hensons paid a renewal annual premium of $44.00 for coverage through April 16, 1975. With their renewal notice, the Hensons were informed that the inflation coverage had increased their "Unscheduled Personal Property" coverage to $8,400.00 and their "Additional Living Expenses" coverage to $1,680.00. In August of 1974, the Hensons notified State Farm's agent, David A. Finneseth, that they had purchased and were moving into a used mobile home, which was located a few miles away from their former rented rural home. Mr. Henson applied for insurance coverage on the mobile home through State Farm. Such application, filled out by Agent Finneseth but signed by Mr. Henson, requested the following coverage:

```
Mobile Home . . . . . . . . . . $4,500.00
Unscheduled personal property . $4,000.00
Additional living expenses. . . $1,000.00
Personal liability. . . . . . .$50,000.00
Medical payments. . . . . . . .   $500.00-$25,000.00
```

Henson's application was described as a "Rewrite" application. However, there is conflicting testimony as to whether anything was said about the transfer of coverage, and the application form does not specify that it is intended to transfer previously held coverage. Mr. Henson testified that he thought that at the time he applied for the mobile home coverage, his $8,000.00 personal property insurance would remain in effect.

On October 2, 1974, State Farm mailed a letter of cancellation of the mobile home policy applied for in August of 1974. The

Hensons immediately obtained mobile home insurance from another insurance company, including $500.00 on the contents.

While purchasing substitute mobile home insurance coverage, Mr. Henson asked his new insurance agent if he could obtain personal property coverage equivalent to that which the Hensons currently held with State Farm. The insurance agent, to determine the Hensons' current coverage status, telephoned State Farm Agent Finneseth who told him that the Hensons' personal property policy was no good and that a premium refund would be forthcoming. Agent Finneseth also spoke on the phone at that time to Mr. Henson and asserts that he told Mr. Henson that the Hensons' policy either had been canceled or soon would be canceled and that a premium refund would be forthcoming.

The Hensons never received a cancellation of their personal property insurance policy, nor did they receive a refund of the remaining premium paid on such policy.

On October 20, 1974, while the Hensons were in Minot, North Dakota to bring their new baby home from the hospital, their mobile home, including their household and personal belongings, was totally destroyed by fire.

At the trial of the Hensons' claim against State Farm, State Farm asserted that the personal property insurance policy had been canceled. The trial court found that the policy had not been canceled and such ruling is not contested herein. However, the district court limited recovery awarded to the Hensons to $1,000.00 for personal property loss, in addition to $360.00 for additional living expenses. In limiting the damages awarded to the Hensons to $1,000.00, the trial court held applicable a policy restriction on coverage when the insureds' personal property is removed from the insureds' described premises. The Hensons appeal from the trial court's application of such policy restriction, contending that the aforesaid policy restriction is not applicable in cases where the insureds' personal property has been moved to new premises established by the policyholders as their place of residence.

A perusal of the State Farm "Homeowners Policy" reveals the following provisions that relate to an insured's change of residence and the effect this would have on an insured's insurance coverage:

1. On page 1 of the policy, under the heading of "Policy Declarations", the policy indicates it is for a dwelling of "brick veneer".

2. Also on page 1 of the policy, within a small-type paragraph at the bottom of the page, the policy provides, within a 249-word sentence, the following phrase (starting with word number 203):
   ". . . to the property described herein while located or contained as described in this policy . . ."

3. On page 3 of the policy, under the heading of "Blank Endorsement" the legal description of the land upon which the Hensons' rented home was situated is set out in full.

4. On page 4 of the policy, within Section I, under the heading "Description of Property and Interests Covered", "Coverage B—Unscheduled Personal Property", the policy provides, in pertinent part:
   "This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an Insured, while on the described premises and, at the option of the Named Insured, owned by others while on the portion of the premises occupied exclusively by the Insured.
   "This coverage also includes such unscheduled personal property while elsewhere than on the described premises, anywhere in the world:
   (1) owned or used by an Insured; or
   (2) at the option of the Named Insured;
   (a) owned by a guest while in a residence occupied by an Insured; or
   (b) owned by a residence employee while actually engaged in the service

of an Insured and while such property is in the physical custody of such residence employee or in a residence occupied by an Insured;

(3) but the limit of this Company's liability for the unscheduled personal property away from the premises shall be an additional amount of insurance EQUAL TO 10% of the amount specified for Coverage B, but in no event LESS THAN $1,000."

5. On page 4 of the policy, within Section I, under the heading "Supplementary Coverages", paragraph 1. "Automatic Removal", the policy provides:

"If, during the term of this policy, the Named Insured removes unscheduled personal property covered under Coverage B from the premises to another location within the Continental United States or the State of Hawaii, to be occupied as his principal residence, THE LIMIT OF LIABILITY FOR COVERAGE B SHALL APPLY AT EACH LOCATION IN THE PROPORTION THAT THE VALUE AT EACH LOCATION BEARS TO THE TOTAL VALUE OF ALL SUCH PROPERTY COVERED UNDER COVERAGE B.

"PROPERTY IN TRANSIT SHALL BE SUBJECT TO THE LIMIT OF LIABILITY FOR UNSCHEDULED PERSONAL PROPERTY AWAY FROM THE PREMISES.

"THIS COVERAGE SHALL APPLY ONLY FOR A PERIOD OF 30 DAYS FROM THE DATE REMOVAL COMMENCES AND SHALL THEN CEASE."

6. On page 9 of the policy, under the heading "DEFINITIONS", the following definitions for "insured premises" and "residence premises" applicable to both Sections I and II are given:

"(b) "insured premises" means

"(1) the residence premises described in the Declarations of this policy; and

"(2) under section II only;

"a. all other premises where the Named Insured or his spouse maintains a residence, except business property and farms;

"b. any residence premises acquired by the Named Insured or his spouse during the term of this policy;

"c. any residence premises which are not owned by any Insured but where an Insured may be temporarily residing;

"d. vacant land, other than farm land, owned by or rented to any Insured; and

"e. individual or family cemetery plots or burial vaults.

"(c) "residence premises" means

"(1) a one, two, three- or four-family dwelling building, appurtenant structures, grounds and private approaches thereto; or

"(2) that portion of any other building occupied as a residence; provided that such premises is used as a private residence by the Named Insured or his spouse but excluding any portion of the premises used for business purposes."

The policy contains no other provisions that relate to an insured's change of residence.

The Hensons contend that the foregoing provisions are ambiguous, failing to clearly state what effect a change of residence will have on policy coverage. The Hensons further contend that if a policyholder were to attempt to interpret the policy as it relates to a change of residence, one would conclude that a change of residence would not affect personal property insurance policy coverage for three reasons.

First, the Hensons point out that no express policy provisions prohibit moving or negate coverage at a new residence. Nothing in the policy plainly informs an insured that his property would not be covered at a new residence. The Hensons argue that, under the doctrine of "reasonable expectations", State Farm should not now be entitled to have the policy read as though it

prohibited the moving of the insureds' household goods to a new residence without limiting their insurance coverage.

Second, the Hensons contend that coverage at a new location is recognized in the policy. The Hensons first direct us to the definition of "residence premises" set out on page 9 of the policy (quoted in full earlier herein in numbered paragraph 6).

The Hensons also direct our attention to the "Automatic Removal" clause found on page 4 of the insurance policy, under the title "Supplementary Coverages" (quoted earlier herein in numbered paragraph 5). The Hensons contend that such clause would be reasonably understood by a policyholder to mean that coverage would follow to a new location, but that coverage during the course of the moving process, including storage, would be limited to a 30-day period.

Finally, the Hensons contend that the "away from the premises" coverage is a supplemental coverage, and not a restriction or limitation on the policy's basic coverage. The Hensons point out that the clause specifically says that it is "an additional amount of insurance". The Hensons further contend that such clause provides no language that would indicate that it is intended as a limitation of coverage on all of an insured's household goods moved to a new residence, but, rather, that such clause would be more appropriately applied as extended coverage on things in transit, such as suitcases of clothes on a trip, or a television set being taken to a repairman, or other similar items. The Hensons also point out that it would also be literally applicable to household goods being transported from a former to a new residence, in transit, and not located at either.

■ We agree with the Hensons' contention that the policy provisions are ambiguous. State Farm has made no effort to insert commonly understood language that would denote to a policyholder that a particular policy limitation applied to actual situations commonly called "moving", "change of residence", or "change of domicile". The trial court, however, decided to ignore such ambiguity, and based its decision on its reading of the contract construed as a whole, reasoning that insurance companies are entitled to know exactly where the insured property is to be located and the kind of building or structure that will contain the insured's property, and that if such location is changed, the insured would know that the insurance policy's coverage would be limited. We disagree.

■ As was stated by this court in *Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663, 670 (N.D.1977):

" . . . it has been well established in North Dakota that any ambiguity or reasonable doubt as to the meaning of a policy is to be construed strictly against the insurer and in favor of the insured, and if language in a policy will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted. [Citations omitted.] Section 9–07–19, NDCC, provides in part:

" 'In cases of uncertainty not removed by the . . . rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party . . .' "

Insurance policy exclusions and limitations *that are ambiguous* are not to be cured through the use of rules of contractual interpretation known only to attorneys. The insurance company is the only party that has the opportunity to draft the language of its insurance policy exclusions and limitations. An insurance policy is clearly a contract of adhesion wherein the insured has no control over the terms inserted therein. We do not find it unforeseeable or even unlikely that an insured would move to a new residence before the expiration of a personal property insurance policy. If State Farm had wanted the phrase "away from the premises" to include property moved to a new residence, it could easily have done so at several places within the policy, in a manner any policyholder could

have understood. Instead, State Farm chose to use the language quoted earlier herein. To arrive at the decision advocated herein by State Farm would require this court, first, to read the whole policy to determine that policyholders should assume that personal property location is important to the insurance company and then to use that assumption as an interpretive guide of ambiguous language contained in a policy limitation so as to limit recovery in the event the insured has moved to a new residence. We do not use such a constrained approach to the interpretation and application of insurance policy limitations.

■ From the totality of the circumstances of the instant case (including the policy's use of ambiguous change-of-residence limitations discussed herein), we think it especially significant and controlling that the Hensons had paid their personal property insurance premium; that State Farm had tendered no refund of such premium prior to the time that the Hensons filed their claim; that State Farm had not canceled the Hensons' personal property insurance policy; and that the uncanceled personal property insurance policy, although labeled a "Homeowners Policy" did not require homeownership, but was in the nature of a "Renter's Policy", designed for use by a renter, who can reasonably be expected to change his residence. We therefore find that because the policy limitation relied upon by the trial court to limit the Hensons' recovery to $1,000.00 for personal property loss is ambiguous, such limitation should receive an interpretation which will impose liability on the insurer as advocated by the Hensons herein, thus making the full amount of the personal property insurance coverage ($8,400.00) contained in State Farm's policy No. 34–049507 applicable to the facts of the instant case.

The decision of the district court finding the Hensons' State Farm personal property insurance policy in force and uncanceled, and finding the Hensons entitled to $360.00 for "additional living expenses" is affirmed; but the decision of the district court limiting State Farm's liability to $1,000.00 for loss of unscheduled personal property is reversed. The case is remanded for proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.