**WALLE MUTUAL INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Charles D. SWEENEY, Donald L. Rawlings for the benefit of himself, Defendants and Appellants.**

**No. 870063.**

Supreme Court of North Dakota.

Feb. 1, 1988.

Letnes, Marshall, Fiedler & Clapp, Ltd., Grand Forks, for plaintiff and appellee; argued by Jay H. Fiedler.

Stefanson, Landberg & Plambeck, Moorhead, Minn., for defendant and appellant Rawlings; appearance by Randolph E. Stefanson.

Bruce E. Bohlman, Ltd., Grand Forks, for defendant and appellant Sweeney; argued by Michael E. Juntunen.

LEVINE, Justice.

Defendants Charles D. Sweeney and Donald L. Rawlings appeal from a judgment of the Grand Forks County district court declaring that the plaintiff, Walle Mutual Insurance Co., is not obligated to defend or indemnify Sweeney from claims of wrongful death arising from Sweeney's automobile collision with Gerald Rawlings on July 17, 1985. We affirm.

In 1980 Sweeney purchased automobile insurance issued by General Casualty Co. from Bill Fruhwirth of the Larimore Insurance Agency, Larimore, North Dakota. In 1981 General Casualty reduced Sweeney's liability limits to $25,000 per person for bodily injury, $50,000 per accident for bodily injury, and $10,000 per accident for property damage.

In 1982 Sweeney purchased from Duane Larson, of the Elk Valley Bank, presently First American Bank, in Larimore, North Dakota, a farm liability policy written by Walle Mutual Insurance Co. with liability limits of $300,000. The farm policy excluded coverage of claims arising out of the "ownership, maintenance, operation, use, loading or unloading of ... any motor vehicle owned or operated by, or rented or loaned to any insured." The policy defines "motor vehicle" as:

"A land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) *but does not include,* except while being towed by or carried on a motor vehicle, *any of the following:* utility, boat, cab or home trailer, recreational motor vehicle, crawler or farm-type tractor, *farm implements* or, if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads." [Emphasis added.]

In 1983 Sweeney purchased from Larson a personal liability catastrophe policy, also known as an umbrella policy, written by St. Paul Fire and Marine Insurance Co. This policy provided coverage of up to one million dollars for bodily injury liability exceeding $250,000 per person arising from the operation of Sweeney's automobiles.

When Larson sold Sweeney the umbrella policy, he told Sweeney to ask General Casualty, Sweeney's automobile insurance carrier, to increase Sweeney's automobile coverage because the gap between the $25,000 limits of the automobile policy and the $250,000 floor of the umbrella policy left Sweeney partially uninsured. Sweeney attempted to have his automobile policy limits raised, but General Casualty declined to raise them at that time.

Sweeney renewed the General Casualty automobile policy, the Walle Mutual farm policy, and the St. Paul Fire and Marine umbrella policy in every year material to this action.

The incident giving rise to this declaratory judgment action occurred at the intersection of a county road and United States Highway 2 near Larimore, North Dakota, on July 17, 1985. Sweeney, driving a pickup which was used solely for farming purposes, was returning to his father's farm with parts for a combine. As Sweeney crossed Highway 2, his pickup collided with a westbound vehicle driven by Gerald Rawlings, who was killed. Donald L. Rawlings, the surviving father of Gerald Rawlings, filed a wrongful death action against Sweeney.

Walle Mutual then brought a declaratory judgment action against Sweeney and Donald L. Rawlings, seeking a declaration that Sweeney's pickup is a "motor vehicle" and not a "farm implement," and is thus excluded from coverage under the farm policy. After a bench trial the district court concluded that "the relevant language [*i.e.,* "motor vehicle" and "farm implements"] contained in the policy of insurance issued by Walle Mutual Insurance Company is ambiguous as held by the North Dakota Supreme Court in *Heitkamp v. Milbank*

*Mutual Ins. Co.,* 383 N.W.2d 834 (N.D. 1986)." However, the district court found that neither Walle Mutual nor Sweeney intended the farm policy to cover a wrongful death claim arising from the operation of Sweeney's pickup truck. The court also found that Sweeney had no reasonable expectation that the Walle Mutual policy would cover his pickup. Based on these findings of fact, the district court concluded that Sweeney was not entitled to a defense or indemnity by Walle Mutual in the wrongful death suit brought by Donald L. Rawlings. The district court granted declaratory judgment in favor of Walle Mutual, and Sweeney and Rawlings appealed.

There are two issues on appeal: (1) Whether a trial court is bound as a matter of law to strictly construe an ambiguous insurance contract in favor of the insured regardless of the applicability of other rules of contractual interpretation; (2) Whether the trial court's finding that neither Sweeney nor Walle Mutual expected or intended the farm policy to cover a pickup is clearly erroneous. Neither side disputes the trial court's determination that the policy language is ambiguous.

■ Defendants argue that the district court erred as a matter of law in failing to construe the ambiguous insurance policy strictly in favor of the insured. They claim that once an insurance policy is ambiguous, there is automatic coverage as a matter of law. They rely on our oft-repeated refrain that "any ambiguity or reasonable doubt as to the meaning of the policy is to be strictly construed against the insurer and in favor of the insured." *See, e.g., Farmland Mutual Ins. Co. v. Farmers Elevator, Inc.,*

404 N.W.2d 473, 477 (N.D.1987). However, this principle is based on NDCC § 9–07–19, which reads:

> *"In cases of uncertainty not removed by the preceding rules,* the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, except in a contract between a public officer or body, as such, and a private party, and in such case it is presumed that all uncertainty was caused by the private party." [Emphasis added.]

*See Conlin v. Dakota Fire Ins. Co.,* 126 N.W.2d 421, 425 (N.D.1964). Thus, NDCC § 9–07–19 is applicable only when the "preceding rules," namely, §§ 9–07–01 through 9–07–18,[1] fail to resolve the ambiguity. Of the preceding rules, §§ 9–07–03 and 9–07–12 have particular significance in construing an ambiguous contract. The strict construction rule contained within § 9–07–19 is a rule of last resort and is not applicable to frustrate any clear intentions of the parties. 2 Couch on Insurance 2d, 15:74 at 357 (1984). *See also* 13 Appleman, Insurance Law and Practice, § 7403 at 306–07, 331–32 (1976).

This court may have invited defendant's argument by unnecessarily resorting to the strict construction rule in order to fortify a result, thereby obscuring the preceding statutory rules of contract interpretation. *See* 2 Couch, *supra* § 15:69 at 320. See, *e.g., Heitkamp,* 383 N.W.2d at 834 (jury verdict of coverage supported by evidence of intent); *Henson v. State Farm Fire &*

---

1. Section:

9–07–01. Public and private contracts interpreted by same rules.
9–07–02. Language of contract governs if clear.
9–07–03. Contract interpreted to give effect to mutual intention.
9–07–04. Intention ascertained from writing alone if possible.
9–07–05. Real intention to govern in cases of fraud, mistake, or accident.
9–07–06. Contract interpreted as a whole.
9–07–07. Several contracts part of one transaction interpreted together.
9–07–08. Contract interpreted so it may be carried into effect.

9–07–09. Words to be interpreted in ordinary sense.
9–07–10. Interpretation of technical words.
9–07–12. Contract explained by reference to circumstances.
9–07–13. Contract extends only to things to be covered.
9–07–14. Interpreted as promisor believed promisee understood it.
9–07–15. Clauses subordinate to general intent.
9–07–16. Written part of contract controls printed part.
9–07–17. Repugnancies reconciled with intent.
9–07–18. Inconsistent words rejected.
(Section 9–07–11. Repealed.)

*Casualty Co.*, 252 N.W.2d 200 (N.D.1977) (holding based on estoppel theory).

In several cases, discussed below, there appears to be a leap from a finding of ambiguity directly to a finding of coverage. However, upon careful examination, these cases are not inconsistent with cases that do give other rules of contractual interpretation their statutorily mandated priority over the strict construction rule. *See, e.g.,* *Thiel Industries v. Western Fire Ins. Co.,* 289 N.W.2d 786 (N.D.1980) (applying NDCC § 9–07–16, rule that written part of contract controls printed part); *Haugen v. Auto–Owners Ins. Co.,* 191 N.W.2d 274 (N.D.1971) (applying NDCC § 9–07–06, rule that contract is to be interpreted as a whole).

In *Aid Ins. Services, Inc. v. Geiger,* 294 N.W.2d 411 (N.D.1980), at issue was whether a comprehensive general liability policy issued by Aid Insurance to Geiger afforded coverage for a property damage award against Geiger. The policy contained one clause excluding "property damage to work performed by or on behalf of [Geiger] arising out of the work or any portion thereof...." Another clause excluded from coverage "liability assumed by [Geiger] under any contract or agreement except an incidental contract," and excluded from this exclusion, liability for breach of warranty of workmanlike performance. The trial court granted summary judgment in favor of Geiger. The parties agreed on appeal there were no issues of fact; the only issue was whether the policy covered property damages awarded in a separate lawsuit. We found the exclusion clauses

ambiguous, and relying on the rule of strict construction against the insurer,[2] we held that Geiger's property damage liability was covered by the Aid Insurance policy.

In *Geiger,* strict construction was the only effective statutory aid for the interpretation of the ambiguous language. Neither party introduced evidence of the parties' intent at the time of contracting, so the "mutual intention of the parties" was not ascertainable. NDCC § 9–07–03.[3] Nor was there evidence of the circumstances under which the contract was made. NDCC § 9–07–12.

We could discuss in detail similar cases where this court resorted to strict construction to resolve contractual ambiguity. However, it suffices to say that in *Corwin Chrysler–Plymouth, Inc. v. Westchester Fire Ins. Co.,* 279 N.W.2d 638 (N.D.1979); *Williams v. Niesen,* 261 N.W.2d 401 (N.D. 1977); *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663, 673 (N.D.1977) (special concurrence authored by Chief Justice Erickstad and joined by a majority of the court); and *Scott v. National Travelers Life Ins. Co.,* 171 N.W.2d 749, 38 ALR3d 1444 (N.D.1969), there was no extrinsic evidence of the parties' intent at the time of contracting, leaving no rule of construction to resolve the ambiguities other than the rule of strict construction. Thus, in accord with NDCC § 9–07–19, uncertain contractual language was construed most strongly against the party causing the uncertainty to exist, because other rules of construction failed to clarify the ambiguous language.

---

2. "However, it is well-established in North Dakota that, because an insurance policy is a contract of adhesion, any ambiguity or reasonable doubt as to the meaning of the policy is to be strictly construed against the insurer and in favor of the insured. If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted." [Citations omitted.] *Aid Ins. Services, Inc. v. Geiger,* 294 N.W.2d 411, 414.

3. In *Emcasco Ins. Co. v. L & M Development, Inc.,* 372 N.W.2d 908 (N.D.1985), the same exclusionary clauses were at issue which were found ambiguous in *Geiger, supra.* Emcasco Insurance argued that counsel in the *Geiger* case

failed to adequately inform the *Geiger* court of the insurance industry's intent, and asked the North Dakota Supreme Court to overrule *Geiger.* The court declined to overrule *Geiger,* holding instead that coverage for damages arising from breach of warranty was "clearly and specifically provided" and that such specific language was not overcome by general exclusionary language. Thus, the court based its holding, not on the strict construction rule used in *Geiger,* but on the legal maxim that particular expressions qualify general expressions, *Oakes Farming Ass'n v. Martinson Bros.,* 318 N.W.2d 897 (N.D.1982), and NDCC § 31–11–05(25). *See also* NDCC § 9–07–15.

As discussed above, the strict construction rule embodied in § 9–07–19 is not to be applied to ambiguous contractual language unless NDCC §§ 9–07–01 through 9–07–18 fail to remove the ambiguity. NDCC § 9–07–19. In this case, there are two rules of contract interpretation that clarify the ambiguity.

Section § 9–07–03 states:

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful...."

Section 9–07–12 states:

"A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

The mutual intention of the parties is to be ascertained, if possible, from the writing alone. NDCC § 9–07–04. However, if the intention of the parties cannot be determined from the writing alone, extrinsic evidence is permissible. *Sorlie v. Ness*, 323 N.W.2d 841 (N.D.1982).

■ The mutual intention of Sweeney and Walle Mutual was ascertainable from the parol evidence. Sweeney admitted, and the district court found, that Sweeney did not intend the Walle Mutual farm policy to cover a pickup truck. Pursuant to NDCC § 9–07–03, the ambiguous terms, "farm implements" and "motor vehicle," must be interpreted so as to give effect to this intention. The ambiguous terms may also be explained by reference to the circumstances under which the contract was made. NDCC § 9–07–12; *Heitkamp*, 383 N.W.2d at 836, citing *Kruger v. Soreide*, 246 N.W.2d 764 (N.D.1976). When this contract was made, there were no representations that the pickup would be covered under the farm policy. *Cf. Heitkamp*, 383 N.W.2d at 843 (jury found that insurance agent made representation that pickup was covered by farm policy).

Further, some fifteen months after Sweeney purchased the farm policy, but before any controversy arose as to the effect of the farm policy, Sweeney and Larson had a conversation which aids in ascertaining the parties' intent at the time

of contracting. Larson advised Sweeney that his automobiles were partially uninsured and suggested Sweeney increase his coverage. Sweeney unsuccessfully attempted to have his automobile insurance limits raised. Parties' conduct subsequent to a contract's execution may be used to help determine the meaning of ambiguous language. *Graber v. Engstrom*, 384 N.W. 2d 307 (N.D.1986). *See also Zito v. Firemen's Ins. Co.*, 36 Cal.App.3d 277, 111 Cal. Rptr. 392 (1973) (holding that the purchase of separate insurance on rented business truck is evidence of intent that general automobile liability policy does not cover rented business truck).

The district court interpreted the uncertain contractual language by reference to these circumstances and also to give effect to the ascertainable mutual intent of the parties at the time of contracting, and concluded that "motor vehicle" included, and "farm implements" excluded, Sweeney's pickup truck.

We hold that the district court properly applied NDCC ch. 9–07 in construing the ambiguous insurance policy and did not err in failing to construe the language of the policy against the insurer and in favor of the insured pursuant to NDCC § 9–07–19 when the ambiguity was removed or explained by the application of the rules of contract interpretion contained in §§ 9–07–01 through 9–07–18.

The second issue is whether the trial court clearly erred in finding that neither Walle Mutual nor Sweeney expected or intended that the farm policy cover Sweeney's pickup. When parol evidence is admitted to explain ambiguous matters in an agreement, it is for the trier of fact to determine the effect of the evidence upon the ambiguity. *E.g., Schulz v. Hauck*, 312 N.W.2d 360, 363 (N.D.1981). Findings of fact are not set aside unless clearly erroneous, and due regard is given to the opportunity of the trial court to judge the credibility of the witnesses. NDRCivP 52(a). A finding of fact is not clearly erroneous unless it has no support in the evidence or, although there may be some supporting evidence for it, this court is left with a definite and firm conviction that a mistake has been made. *Tom Beuchler Construc-*

*tion v. City of Williston,* 413 N.W.2d 336 (N.D.1987).

There is support in the record for the trial court's finding that neither Walle Mutual nor Sweeney intended the farm policy to cover a pickup. Sweeney testified that he did not believe the farm policy covered his pickup. Duane Larson, who sold Sweeney the farm policy, testified that he never suggested to Sweeney that the policy covered pickups, and that he had a mental habit of telling insurance applicants that farm policies do not cover licensed motor vehicles. The policy application made no reference to, and asked nothing about, automobiles or trucks; the farm policy premiums were only a fraction of the premiums Sweeney paid for his automobile insurance; and Duane Larson advised Sweeney to increase his automobile coverage with General Casualty. We are not persuaded that a mistake has been made. We hold that the trial court did not clearly err in finding that the parties did not mutually intend that the Walle Mutual farm policy should cover Sweeney's pickup.[4]

The judgment is affirmed.

ERICKSTAD, C.J., and MESCHKE and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the opinion authored by Justice Levine. I believe she has properly analyzed the decisions of this court in that opinion. However, I write specially to note there would be some naivete involved if a reader were to conclude that this court views a complex contract of insurance as simply as it would any other contract. Our past opinions belie that conclusion. Thus, although I agree with Justice Levine's observation that we construe an ambiguous contract against the insurance company only if the ambiguity cannot be explained by other rules of construction, the decisions

of this court also reflect that the application of such rules must clearly indicate that the parties, particularly the insured, contemplated no coverage to escape the conclusion that dictates coverage if there is an ambiguity. For example, conclusions such as "If one interpretation of the policy language will impose liability on the insurer and the other will not, the interpretation favorable to the insured will be adopted" [*Williams v. Niesen,* 261 N.W.2d 401, 404 (N.D. 1977)], indicate, at least to me, that insurance companies whose policies contain ambiguous provisions concerning coverage will need to clearly prove coverage was not intended by the parties to escape their obligation. I do not read the majority opinion as a deviation by this court from that position. The evidence was clear that the parties did not contemplate coverage of the pickup as a farm implement.

GIERKE and MESCHKE, JJ., concur.

---

**4.** We deem it unnecessary to review the district court's finding that Sweeney had no reasonable expectation that his pickup was covered under the farm policy. The district court's finding that neither Walle Mutual nor Sweeney intended the farm policy to cover Sweeney's pickup is sufficient to clarify the ambiguous definition of "motor vehicle" and "farm implements" in the

contract. The "doctrine of reasonable expectation," which states that an ambiguous contract must be interpreted to mean what the weaker contracting party reasonably expects the contract to mean, has not been endorsed by a majority of this court. *See Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663, 673 (N.D.1977).