**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Leon LaROQUE, Defendant,**

and

**Monica Baker, a minor child, and Donna White Tail, individually and as parent and guardian of Monica Baker, a minor child, Defendants and Appellants.**

Civ. No. 910352.

Supreme Court of North Dakota.

June 25, 1992.

Thomas E. Rutten (argued) of Traynor, Rutten & Traynor, Devils Lake, for plaintiff and appellee.

Maureen White Eagle (argued) of Foughty, Christianson, White Eagle & Berg, Devils Lake, for defendants and appellants.

LEVINE, Justice.

Monica Baker, a minor child, and Donna White Tail, individually and as parent and guardian of Baker, appeal from a summary judgment declaring that a motor vehicle liability policy issued by State Farm Mutual Automobile Insurance Company [State Farm] to Leon LaRoque did not provide coverage for injuries sustained by Baker and White Tail. We affirm.

In June 1989, White Tail and Baker began living with LaRoque in a house rented by him in Sheyenne, North Dakota. LaRoque and White Tail were not married, and Baker is not LaRoque's biological or adopted child. On December 4, 1989, White Tail and Baker were seriously injured while riding in a vehicle owned by White Tail but driven by LaRoque.

White Tail and Baker received basic no-fault benefits from White Tail's insurer, but they also sought coverage under a policy issued by State Farm to LaRoque for his 1974 Chevrolet Blazer. That policy covered LaRoque's use of a "non-owned car," which it defined as "a car not: ... furnished or available for the regular or frequent use of: you." According to a claim superintendent, State Farm issued the policy to LaRoque in June 1988 with Amendatory Endorsement 6025J, effective July 7, 1988. The endorsement said that the definition of a "non-owned car" was changed to read "a car not owned by or registered or leased in the name of ... any other person residing in the same household as you...."

State Farm commenced this declaratory judgment action against LaRoque, White Tail, and Baker to determine its obligations under its policy with LaRoque. The district court granted summary judgment, declaring that State Farm's policy with LaRoque did not provide coverage for the

injuries sustained by Baker and White Tail. The court concluded that the definition of a "non-owned car" in Amendatory Endorsement 6025J was in effect at the time of the accident and unambiguously excluded coverage for LaRoque's use of White Tail's vehicle. The court alternatively concluded that, as a matter of law, White Tail's vehicle was "furnished or available for the regular or frequent use" of LaRoque under the original definition of "non-owned car." The court also concluded that the definition of "non-owned car" was not contrary to Chapters 39–16.1 and 26.1–41, N.D.C.C., or to public policy. White Tail and Baker [hereinafter collectively referred to as White Tail] appealed.

White Tail initially contends that State Farm's policy with LaRoque is ambiguous and should be strictly construed against State Farm. She argues that a reasonable person would conclude that State Farm's policy provided liability coverage when LaRoque drove a "non-owned car." She contends that State Farm created an ambiguity by defining "non-owned car" to exclude coverage in some instances and by amending that definition. State Farm responds that Amendatory Endorsement 6025J unambiguously excludes coverage for White Tail's claims because it clearly defines a "non-owned car" as a car not owned by "any other person residing in the same household as" the insured.

Our review is under the standards applicable to summary judgment. Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if there is no genuine issue of material fact or inferences to be drawn from undisputed facts, or if only a question of law is involved. *E.g., United Electric Service & Supply, Inc. v. Powers,* 464 N.W.2d 818 (N.D.1991); Rule 56, N.D.R.Civ.P.

■ Our first task is to consider which of the two definitions of "non-owned car" governs this case. State Farm issued its automobile liability insurance policy to La-Roque in June 1988 and that policy was in effect when the accident occurred on December 4, 1989. State Farm's preprinted policy with LaRoque defined "non-owned car" as a "car not ... furnished or available for the regular or frequent use of" LaRoque.[1] However, the uncontroverted affidavit of the company's claim superintendent says that Amendatory Endorsement 6025J was effective July 7, 1988, and was attached to the policy form issued by State Farm to LaRoque.[2] It defined a "non-owned car" as "a car not owned by ... any other person residing in the same household as" LaRoque. If there is a conflict between the provisions of a policy form and an attached endorsement, the provisions of the endorsement prevail. *Haugen v. Auto–Owners Ins. Co. of Lansing,* 191 N.W.2d 274 (N.D.1971). We conclude that Amendatory Endorsement 6025J was in effect on the date of the accident. We therefore review the insurance contract with that definition of "non-owned car."

■ The construction of a written insurance contract is a question of law which is fully reviewable by this court. *E.g., Cormier v. National Farmers Union Property & Casualty Co.,* 445 N.W.2d 644 (N.D. 1989). If the language of an insurance contract is unambiguous, we construe that language according to its clear meaning.

---

1. Whether a car is available for the regular or frequent use of the insured is generally a question of fact. *Kunze v. State Farm Mutual Automobile Insurance Co.,* 197 N.W.2d 685 (N.D. 1972); *American Hardware Mutual Insurance Co. v. National Farmers Union Property and Casualty Co.,* 422 N.W.2d 402 (N.D.1988).

   In *Kunze, supra,* we held that the facts of that case did not establish, as a matter of law, that an insured's boyfriend's vehicle was not furnished or available for her frequent or regular use. We upheld the jury's determination that the insured used her boyfriend's vehicle for a special purpose and not for frequent or regular use.

   In *American Hardware, supra,* we affirmed a trial court's finding of fact that an automobile dealer who allowed a customer to use a pickup on a trial basis did not provide the pickup for the customer's regular use within the meaning of an exclusion in the customer's automobile liability policy.

2. White Tail and Baker have not raised as an issue on appeal any factual dispute over La-Roque's timely receipt of the Amendatory Endorsement.

*Id.;* Section 9–07–02, N.D.C.C. If the language of an insurance contract is ambiguous, we apply our rules of construction in Ch. 9–07, N.D.C.C., to resolve the ambiguity. *Walle Mutual Ins. Co. v. Sweeney,* 419 N.W.2d 176 (N.D.1988); Section 9–07–03, N.D.C.C. Whether the terms of a contract are clear and unambiguous is a question of law for the court. *Dawn Enterprises v. Luna,* 399 N.W.2d 303 (N.D.1987). A contract is ambiguous when reasonable arguments can be made in support of contrary positions as to its meaning. *Id.*

A definition of a term in an insurance contract may exclude coverage if the language of the contract, as a whole, is clear. *Haugen v. Auto–Owners Ins. Co. of Lansing, supra;* Section 9–07–06, N.D.C.C. Here, the policy provides LaRoque coverage for his use of a "non-owned car." The Amendatory Endorsement defines "non-owned car" in clear and explicit language that expresses one idea unequivocally— that a "non-owned car" does not include a car owned by a person residing in the same household as LaRoque. We agree with other states' holdings that similar language clearly excludes coverage. *Dairyland Ins. Co. v. Beekman,* 118 Ariz. 294, 576 P.2d 153 (Ariz.Ct.App.1978) [member of the same household is not ambiguous]; *Farmers Ins. Co. v. Plunkett,* 687 P.2d 470 (Colo.Ct.App.1984) [resident of same household is not ambiguous]; *see generally,* Annot., *Exclusion from "drive other cars" provision of automobile liability insurance policy of other automobile owned, hired, or regularly used by insured or member of his household,* 86 A.L.R.2d 937, § 5 (1962); Annot., *What is a "non-owned" automobile within the meaning of the coverage clause of an automobile liability policy,* 83 A.L.R.2d 926, § 4 (1962). We conclude that the definition of "non-owned car" is unambiguous and excludes coverage when the insured drives a car owned by a person residing in the same household.

White Tail does not dispute that she resided in the same household as LaRoque and that he was driving her vehicle when the accident occurred. Under those circumstances, we conclude that there is no genuine issue of material fact that LaRoque was not driving a "non-owned car" as that term is defined in the insurance contract. LaRoque's insurance policy did not provide coverage for the claims by White Tail, and the district court properly granted summary judgment on that issue.

■ Relying upon *Richard v. Fliflet,* 370 N.W.2d 528 (N.D.1985), and *Hughes v. State Farm Mutual Automobile Insurance Co.,* 236 N.W.2d 870 (N.D.1975), White Tail also argues that the definition of "non-owned car" is contrary to Chapters 39–16.1 and 26.1–41, N.D.C.C., and to public policy and is, therefore, void.

In *Hughes,* we considered the validity of a "household or family exclusion"[3] clause in a motor vehicle liability policy. We recognized that the basic purpose of Chapters 39–16 [Financial Responsibility of Owners and Operators] and 39–16.1 [Proof of Financial Responsibility for the Future], N.D.C.C., was to protect innocent victims of motor vehicle accidents from financial disaster. We said that the license suspension sanctions imposed by Chapter 39–16, N.D.C.C., were intended to guarantee financial responsibility for a *first* accident, in contrast to the requirements of Chapter 39–16.1, N.D.C.C., which were designed to establish proof of financial responsibility for *future* accidents involving a motor vehicle owner or operator who has already had an accident, or who has been convicted of certain traffic offenses. We concluded that our financial responsibility laws and public policy required a motor vehicle liability policy purchased to avoid the sanctions in Section 39–16–05, N.D.C.C., to provide the named insured, and any other person using the insured motor vehicle with permission of the named insured, with mini-

---

**3.** In *Hughes, supra,* 236 N.W.2d at 877, we said that a "household or family exclusion" clause "operates to relieve an insurance company of liability under the terms of the policy of insurance where the named insured or any family or household member is injured in an accident caused by the negligent operation of a motor vehicle by the insured or a member of his family or household."

mum coverage for damages arising out of the ownership, maintenance, or use of the insured motor vehicle. We held that the "household or family exclusion" clause violated our financial responsibility laws and public policy because that clause excluded coverage for a class of beneficiaries suffering damages arising out of the ownership, maintenance, or use of the insured motor vehicle.

In *Richard v. Fliflet, supra,* we held that Section 39–16.1–11(6), N.D.C.C., which prohibits cancellation of a motor vehicle liability policy after an accident, was also incorporated into policies purchased to avoid the sanctions in Section 39–06–05, N.D.C.C. We said that the basic purpose of our financial responsibility laws would be defeated if a policy purchased to avoid those sanctions could be cancelled after an accident.

In this case, White Tail cites language in our financial responsibility laws referring to an "operator's policy" [Section 39–16.1–11(3), N.D.C.C.], and to damages arising out of the "operation of a motor vehicle" [Section 26.1–41–15, N.D.C.C.], and asserts that public policy requires drivers to provide insurance for all vehicles which they operate. She argues that this public policy is further evidenced by the criminal penalty imposed by Section 39–08–20, N.D.C.C.,[4] for driving without liability insurance in the amount required by Chapter 39–16.1, N.D.C.C. She contends that the definition of a "non-owned car" in LaRoque's State Farm policy, which she characterizes as excluding coverage for the insured in most situations in which the insured is driving, does not substantially comply with our financial responsibility laws or public policy because that definition does not ensure

that innocent victims are protected from financial ruin.

The Oregon Court of Appeals rejected a similar argument in *Farmers Insurance Co. v. Stout,* 82 Or.App. 589, 728 P.2d 937 (1986), *rev. den.,* 302 Or. 657, 733 P.2d 1381 (1987). In that case, the insured's automobile insurance policy provided coverage for his use of a non-owned automobile, which was defined as "an automobile not owned by ... any resident of the same household" as the insured. *Stout, supra,* 728 P.2d at 938. The insured lived with the defendant in her mobile home for approximately five months and was driving her car when they were involved in an automobile accident in which the insured was killed and the defendant was seriously injured.

The defendant argued that the definition of "non-owned automobile" was contrary to public policy and void because it excluded a household member from coverage. She asserted that the policy for Oregon's financial responsibility laws was to protect innocent victims of vehicular accidents. Relying upon *Dowdy v. Allstate Insurance Co.,* 68 Or.App. 709, 685 P.2d 444 (1984), *rev. den.,* 298 Or. 172, 691 P.2d 481 (1984), a case invalidating a "family exclusion" clause, the defendant contended that any clause in an insurance policy which had the effect of denying coverage to an innocent victim of an automobile accident was contrary to public policy and void.

In *Stout, supra,* 728 P.2d at 939, the court concluded that *Dowdy* was not controlling because it

> "voided a 'family exclusion' clause that excluded from coverage family members residing in the same household when the

**4.** At the time of the accident, Section 39–08–20, N.D.C.C., provided:

> "*Driving without liability insurance prohibited—Penalty.* A person may not drive a motor vehicle in this state without a valid policy of liability insurance in effect in order to respond in damages for liability arising out of the ownership, maintenance, or use of that motor vehicle in the amount required by chapter 39–16.1. Upon being stopped by a law enforcement officer for the purpose of enforcing or investigating the possible violation of an ordinance or state law or during

> the investigation of an accident, the person driving the motor vehicle shall provide to the officer upon request satisfactory evidence of the policy required under this section. If unable to comply with the request, that person may not be charged with a violation of this section if that person submits such evidence to the officer or the officer's agency within twenty days of the date of the request. Violation of this section is a class B misdemeanor and the sentence imposed must include a fine of at least one hundred fifty dollars."

240

insured was driving a covered automobile.... In this case, the question is whether, under the terms of his insurance policy, decedent was driving a *covered* automobile. Because he was not, *all persons*, including household members, who suffered injuries in the accident were not covered under his policy. Therefore, although the non-owned automobile clause has the effect of denying coverage to a household member in this case, it does not fall within the *Dowdy* analysis." [Emphasis in original.]

The court went on to characterize the defendant's argument as requiring an insured's automobile insurance policy to cover *every* car that the insured might conceivably drive and, that if that coverage were not provided, the insurance policy violated the public policy of protecting innocent victims. However, the court also rejected that argument because Oregon's financial responsibility laws demonstrated a legislative intent to allow insurance companies to insure *fewer* than all vehicles driven by an insured.[5]

We believe the rationale of *Stout* is persuasive. In *Hughes*, we emphasized that the "household or family exclusion" clause excluded an entire class of beneficiaries from coverage when the insured was driving an insured motor vehicle. As in *Stout,* the issue in this case is whether or not LaRoque was driving an insured vehicle under the terms of his insurance policy. Because he was not, all persons, including household members, who suffered injuries in the accident were not covered under his policy.

We also believe that our financial responsibility laws do not evidence a clear public policy that a motor vehicle liability policy cover the named insured for every automobile that the insured might drive. Instead, we believe our financial responsibility laws demonstrate a legislative intent to allow insurance companies to insure fewer than all vehicles driven by an insured.

Section 39–16.1–11(1), N.D.C.C., defines a "motor vehicle liability policy" as an "owner's" or an "operator's"[6] policy certified as proof of financial responsibility and issued for the benefit of the named insured. An "owner's policy" must designate "all motor vehicles with respect to which coverage is thereby to be granted" and must provide certain minimum coverage for the named insured for damages arising out of the ownership, maintenance, or use of the designated motor vehicle. Section 39–16.1–11(2), N.D.C.C. By requiring a designation of all covered vehicles, the statute contemplates the circumstance that there will be vehicles not designated and therefore not covered. An "operator's policy" requires insurance for the named insured for damages arising out of the use of "any motor vehicle, either unlimited, or limited by excluding certain classes or types of motor vehicles." Section 39–16.1–11(3), N.D.C.C. This statute also contemplates that an "operator's policy" may furnish limited coverage by excluding certain classes or types of vehicles.

Sections 39–16.1–09 and 39–16.1–10, N.D.C.C., similarly illustrate limits to insurance coverage. Section 39–16.1–09, N.D.C.C., requires a certificate of insurance to designate "all motor vehicles cover-

5. The *Stout* court cited ORS 486.011(11) and ORS 486.506(1)(c).
  ORS 486.011(11) provided:
  " ' "Motor vehicle liability insurance policy" means a policy or part of a policy either designating by explicit description or by appropriate reference all motor vehicles for which coverage is provided * * *.' "
  ORS 486.506 provided:
  " '(1) Every certificate of insurance [issued as evidence of financial responsibility] shall:
  " ' * * * * *
  " '(c) Describe all vehicles covered by the policy, unless such policy is issued with respect to all vehicles operated by the assured.' "

6. Section 39–01–01, N.D.C.C., provides:
  "44. 'Operator' means every person who drives or is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle.
  "45. 'Owner' means a person, other than a lienholder, having the property in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security."

ed thereby, unless the policy is an operator's policy" and if the certificate covers described motor vehicles or is a limited operator's policy which does not provide coverage for the operation of all other motor vehicles, the commissioner shall designate a license restriction "authorizing the operation of only such vehicles as are covered by the certificate." Section 39–16.1–10, N.D.C.C., requires a non-resident owner of a motor vehicle not registered in North Dakota to have a certificate of insurance from the state in which "the motor vehicle or motor vehicles described in such certificate is registered." We believe that those statutes demonstrate a legislative intent that an insurance company may insure *fewer* than all vehicles driven by an insured.

Our no-fault statutes follow a similar theme and require an "owner of a motor vehicle" to provide "with respect to the motor vehicle ... basic no-fault benefits and the liabilities covered under the motor vehicle liability insurance." Section 26.1–41–02(1), N.D.C.C. Section 26.1–41–15, N.D.C.C., also specifies that the "owner" must have insurance for damages arising out of the "ownership or operation of a motor vehicle." Our no-fault statutes thus impose no-fault requirements on the owner of a motor vehicle. *See* Thomas O. Smith, "North Dakota Auto Accident Reparations Act"—North Dakota's No–Fault Insurance Law, 52 N.D.L.Rev. 147 (1976). Our underinsured and uninsured statutes also require an insurer to provide insurance for "any specifically insured or identified motor vehicle" for damages "arising out of the ownership, maintenance, or use of such uninsured [or underinsured] motor vehicle." Sections 26.1–40–15.2 and 26.1–40–15.3, N.D.C.C.

Although the basic purpose of our financial responsibility laws is to protect innocent victims of motor vehicle accidents from financial ruin, our statutory scheme accomplishes that objective by requiring the owner to purchase insurance coverage for the operation of a designated vehicle. *Hughes, supra. See Dairyland Ins. Co. v. Beekman,* 118 Ariz. 294, 576 P.2d 153 (Ariz.Ct.App.1978) [insurance policy covers the vehicle]. Section 39–08–20, N.D.C.C., is consistent with the statutory scheme that an owner of a motor vehicle must provide insurance coverage for the operation of that vehicle. That statute provides a criminal penalty for driving a motor vehicle without a valid liability policy and requires the policy to cover damages "arising out of the ownership, maintenance, or use of *that* motor vehicle."

■ The purpose of a "non-owned car" clause is to prevent an insured from purchasing an automobile liability insurance policy for only one designated vehicle at a premium charged for one vehicle and thereafter claiming coverage under that policy for the regular use of other vehicles without paying an additional premium for the added risk. Annot., *Exclusion from "drive other cars" provision of automobile liability insurance policy of other automobile owned, hired, or regularly used by insured or member of his household,* 86 A.L.R.2d 937, § 2 (1962). Our statutory scheme corresponds with the reason behind the "non-owned car" clause.

We hold that there is no public policy and no statutory requirement that an insured have coverage for all vehicles operated but not owned by the insured.

Accordingly, we affirm the summary judgment.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

PEDERSON, S.J., sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice JOHNSON, not being a member of this Court at the time this case was heard, did not participate in this decision.

MESCHKE, Justice, dissenting.

I respectfully dissent. I believe that there is a material issue of fact about which definition controls.

If the main policy definition of "non-owned car" applies, summary judgment was improper. There is a material issue of fact about whether White Tail's car was

"furnished or available for the regular or frequent use of" LaRoque.

If the definition in the claimed Amendatory Endorsement controls, the majority opinion is correct. That definition is unambiguous. Since White Tail's car was clearly owned by a "person residing in the same household as" LaRoque, the Amendatory Endorsement would exclude coverage.

The majority states that "the uncontroverted affidavit of the company's claim superintendent says that Amendatory Endorsement 6025J was effective July 7, 1988, and was attached to the policy form issued by State Farm to LaRoque." However, the claim superintendent did not attach either the policy or the Amendatory Endorsement to his affidavit, but only attached several forms. One form shows LaRoque's signature acknowledging changes to the policy effective on 5/31/88, but that form does not refer to the Amendatory Endorsement. The other form, without LaRoque's signature and labeled "AUTO POLICY TRANSACTIONS— STREAMED," shows changes to the same policy. Among the changes stated is "6025J AMENDATORY ENDORSEMENT: CHANGE NON–OWNED COVERAGE– EFF JUL–07–88." However, this latter form displays various dates on it, including "05–31–88," "06–02–90," "06–08–90," and "06–15–90." One inference may be that the Amendatory Endorsement was issued to the insured effective July 7, 1988, but that certainly is not the only inference to be made.

NDRCivP 56(e) on summary judgment directs that "[s]upporting and opposing affidavits must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein." I'm doubtful that a claim superintendent has the position or personal knowledge to testify about policies without producing unequivocal records. Furthermore, I'm not satisfied that this equivocal and circumstantial evidence about a claimed Amendatory Endorsement makes summary judgment appropriate. We should not decide, as a matter of law, the applicability of an Amendatory Endorsement that is disputed.

Other summary judgment standards apply here.

Under Rule 56, N.D.R.Civ.P., a movant for summary judgment must show that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts and that he is entitled to judgment as a matter of law. If the movant fails to meet this initial burden, summary judgment is inappropriate even if the adverse party fails to respond with proof in opposition to the motion. In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion and that party must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Marsh v. Binstock*, 462 N.W.2d 172, 174 (N.D.1990). (Citations omitted). These standards should control here.

Moreover, when State Farm first moved for summary judgment on October 1, 1990, it relied solely on the policy definition, not the definition in the claimed Amendatory Endorsement. Later, on November 15, 1990, State Farm claimed that the definition in the Amendatory Endorsement supported summary judgment. State Farm filed an attorney's affidavit that attached a proposed form of the Amendatory Endorsement with an intercompany letter, dated December 18, 1987, enclosing a "suggested agency release," and suggesting "this release should be reproduced and released as soon as possible." The claim superintendent's affidavit came still later on December 3, 1990. An Amendatory Endorsement attached to the policy was never produced. As White Tail argued to this court, (Appellant's Brief, p. 19), "[a]lthough [State Farm] has argued the policy is clear and easily interpreted, it has been confused as to the correct definition." If an insurance company cannot readily understand its own policy, certainly an insured cannot be expected to do so.

Because I believe that there is a material issue of fact about whether the Amend-

 

atory Endorsement was issued and attached to the policy before the automobile accident, I respectfully dissent.

VERNON R. PEDERSON, Surrogate Judge, dissenting.

In *Hughes v. State Farm Mut. Ins. Co.*, 236 N.W.2d 870, 885 (N.D.1975), a majority of this court said that a policy of insurance is an adhesion contract and for that reason concluded "it must be construed most strongly against the insurance company." Calling the language that excluded coverage unambiguous and clear, this court, nevertheless, voided the exclusion for public policy reasons. That prompted me to dissent.

The majority in this case does not say that this insurance policy is an adhesion contract nor that public policy voids the clear language of the exclusion.

Ordinarily, this court's opinions in insurance policy cases have said that only the language that is ambiguous is construed strongly against the insurance company. If the language was deemed to be clear, the words were applied according to the sense or meaning of those words. Some of the cases which covered at least the period of the 1950's through the 1980's are: *Schmitt v. Paramount Fire Ins. Co.*, 92 N.W.2d 177 (N.D.1958); *Universal Underwriters Ins. Co. v. Johnson*, 110 N.W.2d 224 (N.D.1961): *Stetson v. Blue Cross of North Dakota*, 261 N.W.2d 894 (N.D.1978); and *Walle Mut. Ins. Co. v. Sweeney*, 419 N.W.2d 176 (N.D.1988). There have been some notable exceptions. *Hughes, supra,* for example.

I believe that the time has come for this court to state that insurer-insuree obligations arise, at least in part, out of the relationship. There are circumstances in which a clearly stated exclusion in an insurance policy can be just as unconscionable as one which is ambiguous and, as in *Bekken v. Equitable Life Assur. Soc.*, 70 N.D. 122, 293 N.W. 200 (1940), *no* words and *no* contract can still result in a relationship which creates obligations that are enforceable. Whether the interpretation relies upon the words "reasonable expectations," or "equitable estoppel," or "public policy" should not be that significant. *See Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663 (N.D.1977), and *Auto–Owners Ins. Co. v. Jensen*, 667 F.2d 714 (Ca.1981). *See also Farmers Cooperative Ass'n of Churches Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976).